1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10    JESSE OCHOA,                              Case No. 1:21-cv-00011-HBK

11                   Plaintiff,                 ORDER GRANTING DEFENDANT'S MOTION
                                                TO DISMISS WITH PREJUDICE[1]
12          v.
                                                (Doc. No. 24)
13    EDDY JOELSON,

14                   Defendant.

15

16

17          Pending before the Court is Defendant Eddy Joelson's Motion to Dismiss filed on

18   February 12, 2024.  (Doc. No. 24, "Motion").  Plaintiff did not file any opposition and the time to

19   do so has expired.  Local Rule 230(c).  The Court grants Defendant's Motion.

20                                        **BACKGROUND**

21          Plaintiff initiated this action by filing a prisoner civil rights Complaint pursuant to 42

22   U.S.C. § 1983.  (Doc. No. 1).  Plaintiff is proceeding on his First Amended Complaint filed on

23   August 23, 2023, which alleges an Eighth Amendment claim for deliberate medical indifference

24   stemming from Defendant Joelson placing a medical hold on Plaintiff despite "knowing that the

25   environment at Corcoran State Prison was detrimental" to Plaintiff's health because of the risk of

26   continued exposure to Valley Fever.  (Doc. No. 16 at 4).

27   _____

28   [1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1).  (Doc.
     No. 28).

                                                    1

1   Defendant's pending Motion seeks dismissal of Plaintiff's First Amended Complaint

2   under Rule 12(b)(6) on two grounds: (1) Defendant Joelson is entitled to qualified immunity

3   because there was no clearly established right to be free from exposure to Valley Fever at the time

4   of the incident; and (2) Plaintiff failed to exhaust his administrative remedies as is apparent from

5   the face of the First Amended Complaint.  (Doc. No. 24 at 2).  After Plaintiff failed to file a

6   timely response to Defendant's Motion and noting Plaintiff pro se status, the Court further

7   afforded him a further extension of time.  (*See* Doc. No. 29).  The Court further warned Plaintiff

8   that under Local Rule 230(c) the failure to file a response would be construed by the Court as a

9   non-opposition.  (Doc. No. 29 at 2, ¶2).  As of the date of this Order, Plaintiff did not file any

10   response and the time to do so has expired.[2]

11   **APPLICABLE LAW**

12   **A.  Plaintiff's Failure to Oppose the Motion**

13   The Local Rules in this District provide that in prisoner civil rights cases, "[f]ailure of the

14   responding party to file an opposition or to file a statement of no opposition may be deemed a

15   waiver of any opposition to the granting of the motion and may result in the imposition of

16   sanctions."  E.D. Cal. R. 230(l) (2023).  Failure to follow a district court's local rules is a proper

17   grounds for dismissal.  *U.S. v. Warren*, 601 F.2d 471, 474 (9th Cir.1979).  Thus, a court may

18   dismiss an action for plaintiff's failure to oppose a motion to dismiss, where the applicable local

19   rule determines that failure to oppose a motion will be deemed a waiver of opposition.  *See*

20   *Ghazali v.Moran*, 46 F.3d 52 (9th Cir.1995), cert. denied 116 S.Ct. 119 (1995) (dismissal upheld

21   even where plaintiff contends he did not receive motion to dismiss, where plaintiff had adequate

22   notice, pursuant to F.R.C.P. 5(b), and time to file opposition); *see also Bury v. Adams*, 2006 WL

23   1085083, at *1 (E.D. Cal. Apr. 25, 2006) (recommending district court grant motion to dismiss on

24   exhaustion grounds), report and recommendation adopted, 2006 WL 1832447 (E.D. Cal. June 27,

25   2006); *cf. Marshall v. Gates*, 44 F.3d 722 (9th Cir. 1995); *Henry v. Gill Industries, Inc.*, 983 F.2d

26   943, 949-50 (9th Cir.1993) (motion for summary judgment cannot be granted simply as a

27

28   [2] The Court directed Plaintiff to deliver any response to correctional officials for mailing no later than April 15, 2024 and waited seven (7) days to account for mailing before entering this Order.

1   sanction for a local rules violation, without an appropriate exercise of discretion).

2          Here, the Court deems Plaintiff's failure to oppose Defendant's Motion as a waiver of any

3   opposition, but nevertheless analyzes Defendant's Motion to determine whether dismissal is

4   warranted.

5          **B.  Rule 12(b)(6)**

6          A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the

7   legal sufficiency of a claim."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

8   2011).  Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal

9   theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Id.*; *see also*

10  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the

11  complaint must have sufficient facts to state a facially plausible claim to relief).  In deciding a

12  motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the

13  complaint and determines whether the factual allegations are sufficient to state a right to relief

14  above the speculative level.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr.*

15  *v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the

16  complaint, as well as any reasonable inferences to be drawn from them).

17         Where a motion to dismiss is granted, a district court must decide whether to grant leave

18  to amend.  Courts are instructed to apply Rule 15 with extreme liberality.  *Eminence Capital, LLC*

19  *v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted); *Winebarger v.*

20  *Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).

21  Only where leave to amend would be futile, because "the allegation of other facts consistent with

22  the challenged pleading could not possibly cure the deficiency," should leave to amend be denied.

23  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

24         **C.  Qualified Immunity**

25         A government official is entitled to qualified immunity under Section 1983 unless (1) the

26  official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his

27  conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

28  (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S.

800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).  This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful."  *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017).  The plaintiff bears the burden of establishing that the right alleged was clearly established.  *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

### D.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S. 632, 648 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance."  *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth*, 532 U.S. at 741, and unexhausted claims may not be brought to court, *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at

524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id*.

**E.  CDCR Health Grievance Process**

During the applicable time, CDCR's health grievance process involved a two-step procedure for addressing an inmate's health care concerns. *See* Cal. Code Regs. tit. 15, § 3999.225, et seq.  First, "[t]he grievant shall complete Section A of the CDCR 602 HC and submit to the HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) The action or decision being grieved, or; (2) Initial knowledge of the action or decision being grieved."  Cal. Code Regs. tit. 15, § 3999.227(b); see also id., § 3999.225(n) (defining HCGO). "The grievant shall document clearly and coherently all information known and available to him or her regarding the issue … includ[ing] any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement.  If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." Id., § 3999.227(g); *see also, e.g., Robinson v. Cryer*, 2023 WL 3007344, at *6–7 (E.D. Cal. Apr. 19, 2023), report and recommendation adopted, 2023 WL 3625266 (E.D. Cal. May 24, 2023) (finding medical grievance that did not identify certain defendants did not exhaust plaintiff's administrative remedies with respect to those defendants).

Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition … to HCCAB [Health Care Correspondence and Appeals Branch] … within 30 calendar days plus five calendar days for mailing . . . ."  Cal. Code Regs. tit. 15, § 3999.229(a); see also id., § 3999.225(l) (defining HCCAB).  "The headquarters' level

1    review constitutes the final disposition on a health care grievance and exhausts administrative

2    remedies . . . ."  Id., § 3999.230(h), see also id. § 3999.226(g) ("Health care grievances are subject

3    to a headquarters' level disposition before administrative remedies are deemed exhausted

4    pursuant to section 3999.230.  A health care grievance or health care grievance appeal rejection or

5    withdrawal does not exhaust administrative remedies.") (emphasis added).

6                                                **DISCUSSION**

7              **A.  Qualified Immunity**

8              Defendant argues dismissal is warranted because under binding Ninth Circuit case law,

9    Plaintiff's claims against Defendant are barred by qualified immunity.  (Doc. No. 24 at 7).

10   Plaintiff's Eighth Amendment claim is based on his assertion that sometime after he began

11   experiencing respiratory failure in later December 2018, Defendant Joelson entered a medical

12   hold preventing him from being transferred out of Corcoran State Prison, despite knowing that

13   Plaintiff was at "high risk" for exposure to Valley Fever and further health complications.  (Doc.

14   No. 16 at 4).

15             In *Hines v. Youseff*, 914 F.3d 1218 (9th Cir. 2019), the Ninth Circuit determined that

16   similar claims are barred by qualified immunity.  In the four consolidated cases before the court,

17   prison officials at three Central Valley prisons, including Corcoran State Prison ("CSP"), faced

18   Eighth Amendment claims of exposing inmates to a heightened risk of Valley Fever.  However,

19   the Ninth Circuit, reviewing the prevalence and health impacts of Valley Fever on society at large

20   and in the California prison population specifically, found "no evidence that society's attitude had

21   evolved to the point that involuntary exposure to [a heightened risk of Valley Fever] violated

22   current standards of decency, especially given that millions of free individuals tolerate a

23   heightened risk of Valley Fever by voluntarily living in California's Central Valley and

24   elsewhere."  *Id.* at 1231 (internal quotation marks omitted); *see also Shaheed v. Mitchell*, 2020

25   WL 7759460, at *5 (finding an Eighth Amendment claim based on heightened exposure to Valley

26   Fever barred by qualified immunity, and noting that the court's reasoning in *Hines* is only

27   bolstered by the subsequent population growth in the Central Valley and Southwestern U.S.).

28   Thus, "a reasonable official could have concluded that the risk [of heightened exposure to Valley

1   Fever] was not so grave that it violates contemporary standards of decency to expose anyone

2   unwillingly to such risk, or that exposure to the risk was lawful." *Hines*, 914 F.3d at 1229.

3        In the instant case, Plaintiff claims that in 2018 he suffered from severe respiratory failure

4   and was eventually hospitalized.  (Doc. No. 16 at 3).  Three months later, Plaintiff learned that he

5   had contracted Valley Fever.  (*Id*. at 3-4).  Plaintiff's counselor had ordered him to be transferred

6   to another prison due to the fact that he had been labeled "high risk" for Valley Fever.  (*Id*. at 4).

7   Despite knowing this, Defendant Joelson placed a medical hold that prevented Plaintiff from

8   being transferred.  (*Id*.).  Plaintiff's FAC contends that Joelson's placing a medical hold on

9   Plaintiff demonstrated deliberate medical indifference in violation of the Eighth Amendment.

10       However, as *Hines* makes clear, "no societal consensus has emerged" that the risk of

11  heightened exposure to Valley Fever is "intolerably grave" such that a reasonable official would

12  not permit a prisoner to continue to be involuntarily exposed to it.  *Hines*, 914 F.3d at 1232.  The

13  *Hines* court noted that, after recognizing the extent of the Valley Fever problem, CDCR officials

14  treated the inmates who were "most susceptible to developing severe or disseminated cocci"

15  differently by either transferring them out of the Central Valley prisons or not placing them there

16  in the first place.  In 2007 CDCR began using six clinical criteria to identify these high-risk

17  individuals: "All identified HIV infected inmate patients; (b) History of lymphoma; (c) Status

18  post solid organ transplant; (d) Chronic immunosuppressive therapy (e.g. severe rheumatoid

19  arthritis); (e) Moderate to severe Chronic Obstructive Pulmonary Disease (COPD) requiring

20  ongoing intermittent or continuous oxygen therapy; [and] (f) Inmate-patients with cancer on

21  chemotherapy."  *Id.* at 1225.  After these measures failed to reduce the incidence of infection in

22  the Central Valley prison population, CDCR was forced by an appointed Receiver and the District

23  Court to expand this exclusion policy by effectively suspending the transfer of African-American

24  and diabetic inmates to Central Valley prisons.  *Id.*

25       Plaintiff here does not contend that he was transferred to Corcoran State Prison or kept

26  there in contravention of CDCR's exclusion policies.  The Court is unaware of any policy

27  requiring those exposed to Valley Fever or having suffered a severe case of Valley Fever to be

28  subsequently transferred out of the Central Valley.  To the contrary, the court in *Hines* noted that

7

those exposed to Valley Fever typically develop immunity, suggesting that after contracting the disease an individual would eventually see their health less affected by remaining in the Central Valley.  *Id*. at 1226.  Because Plaintiff was not among those to whom CDCR's exclusion policy applied and has not otherwise shown that a right to be free from heightened exposure to Valley Fever was clearly established at the time of the incident, the Court finds that Defendant Joelson is entitled to qualified immunity for placing a hold on Plaintiff that kept him at Corcoran State Prison.  Accordingly, the Court finds Defendant is entitled to qualified immunity and will grant Defendant's Motion to Dismiss under Rule 12(b)(6).

### B.  Exhaustion of Administrative Remedies

In the alternative, Defendant asserts it is clear from the face of the First Amended Complaint and attachments thereto that Plaintiff did not properly exhaust his Eighth Amendment deliberate medical indifference claim because Defendant Joelson is not mentioned in Plaintiff's grievances, nor do they discuss a medical hold or a proposed transfer.  (Doc. No. 24 at 4).  The Court agrees.

Plaintiff's initial health care grievance, HC 19000807 ("Grievance 807"), filed July 21, 2019, complains of the delay in diagnosing him with Valley Fever by "RN and Dr. DOES 1-3" but does not identify Dr. Joelson by name or describe the conduct that is the subject of this lawsuit, namely the placement of a medical hold that prevented Plaintiff from being transferred out of Corcoran State Prison.  (*See* Doc. No. 16 at 8-10).  The September 16, 2019 Institutional Level Response also does not reflect that CDCR was aware of the complaint that forms the basis of this suit; rather, it documents his medical treatment at CSP beginning on November 19, 2018 and continuing through his diagnosis with Valley Fever on March 7, 2019 and subsequent treatment.  (*Id*. at 17-19).  As of August 22, 2019, the Response notes, Plaintiff's "coccidioidomycosis was stable" and he remained on oral fluconazole with another follow-up scheduled in six weeks.  (*Id*. at 19).  Nor does Plaintiff's appeal or the headquarters level response mention the allegations that are at issue in this case.  Rather, Plaintiff's appeal, filed October 7, 2019, complains that he was never interviewed regarding the issues cited in his grievance, contends that the failure to diagnose him sooner with Valley Fever reflected staff misconduct or

deliberate indifference, and argues that certain facts regarding his symptoms and medical care were improperly omitted from the institutional level response.  (*Id*. at 13-14).  The appeal again does not mention a medical hold or Dr. Joelson.  Likewise, the January 8, 2020 headquarters level response does not reflect any awareness by CDCR officials that Plaintiff objected to a medical hold being placed on him that prevented his transfer.  Instead, it responds to his concerns regarding the lack of an interview, the alleged misconduct by staff, and deficiencies in the institutional level response.  (*See id*. at 21-23).

In certain circumstances, a Plaintiff's failure to name an individual in a grievance may not be fatal.  For example, in *Reyes v. Smith*, plaintiff filed a health care grievance regarding his institution's gradual termination of his access to morphine for pain management.  810 F.3d 654 (9th Cir. 2016).  The institution denied Plaintiff's grievance and appeals and noted in its responses that the prison's Pain Management Committee ("PMC") had "recommended against narcotics."  *Id*. at 656.  After Reyes filed suit against two members of the prison's PMC and other prison officials, the district court granted an exhaustion-based motion for summary judgment as to the two PMC members because they had never been named in Reyes' health care grievances, contrary to Cal. Code Regs. tit. 15 § 3084.2(a) (2015).  *Id*. at 656-57.  The Ninth Circuit reversed, noting the explicit reference to the PMC in the institution's responses in finding that Plaintiff's grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit—denial of pain medication by the defendant doctors [because] [p]rison officials . . . plainly knew that the Pain Management Committee, of which Drs. Smith and Heatley and Smith were members, had decided Reyes should not receive the medication . . ."  *Reyes*, 810 F.3d at 659.  Thus, even though Reyes had not named the specific defendants in his grievance and appeals, the Court found that the prison and those defendants were on notice of the nature of Reyes' claims.  The Court also held that where the prison did not enforce a procedural rule, such as the requirement of naming all involved individuals, but instead addressed a grievance on the merits, it could not later enforce that rule so long as it was on notice of the claim.  *Id*. at 658.

Here, Plaintiff cannot credibly argue that Grievance 807 put prison officials or Defendant Joelson on notice that he would bring the instant claims against Defendant Joelson.  The PLRA

1    requires "proper exhaustion," which "demands compliance with a prison's deadlines and other

2    critical procedural rules."  *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 742 (9th Cir. 2021).

3    And, at a minimum, inmates are required to provide notice of the wrongdoing at issue to "put

4    prison officials on notice of [their] complaint."  *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir.

5    2010).  That means Plaintiff was required to identify Dr. Joelson as a party responsible for the

6    alleged wrongdoing or otherwise notify prison officials that he took issue with actions taken by

7    Defendant Joelson.  *See, e.g.*, Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2019) (requiring inmates to

8    "list all staff member(s) involved and describe their involvement in the issue"); Cal. Code Regs.

9    tit. 15, § 3482(c)(2) (same).  Plaintiff did neither.

10        Instead, Plaintiff's grievance exclusively focused on the delayed diagnosis of Valley

11   Fever and resulting delay in treating him.  (*See* Doc. No. 16 at 8-10).  It offers no clue that

12   Plaintiff objected to a medical hold being placed on him or that Dr. Joelson was responsible for

13   the medical hold.  Nor did the institution's responses to his grievance and appeal reflect that the

14   institution or Defendant Joelson was on notice that Grievance 807 concerned Dr. Joelson's

15   placement of a medical hold or any actions involving interference with Plaintiff's transfer from

16   CSP.  Accordingly, the Court finds Health Care Grievance No. 19000807 failed to exhaust

17   Plaintiff's administrative remedies as to his instant claims against Dr. Joelson.  Thus, it appears

18   from the face of the First Amendment Complaint and attachments thereto, that Plaintiff failed to

19   exhaust his administrative grievances regarding the claim raised in the First Amended Complaint.

20   Thus, in the alternative, the Court grants the Motion to Dismiss on that basis.

21        **C.  Whether Leave to Amend Should be Granted**

22        If a motion to dismiss is granted, "[the] district court should grant leave to amend even if

23   no request to amend the pleading was made . . ."  *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th

24   Cir.2012).  However, leave to amend need not be granted if amendment would be futile or if the

25   plaintiff has failed to cure deficiencies despite repeated opportunities.  *See Mueller v. Aulker*, 700

26   F.3d 1180, 1191 (9th Cir. 2012); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

27   2010).

28        As discussed above, the Court finds dismissal is warranted on two grounds—qualified

immunity and failure to exhaust administrative remedies.  While a court may grant leave to amend after 12(b)(6) dismissal on qualified immunity grounds, *see*, *e.g., Chamndany v. Harding*, 2022 WL 19263348, at *17 (C.D. Cal. Oct. 4, 2022), there are no facts that Plaintiff could plead in an amended complaint that would avoid dismissal on exhaustion grounds.  *See*, *e.g., Cruz v. Jeffreys,* 2018 WL 1193045, at *4 (S.D. Cal. Mar. 7, 2018) ("Because Plaintiff had not exhausted his remedies prior to filing this case, further amendment would be futile").  Thus, the Court finds that further leave to amend would be futile.

Accordingly, it is **ORDERED**:

1. Defendant's Motion to Dismiss (Doc. No. 24) is GRANTED under Rule 12(b)(6) on the grounds of qualified immunity and, in the alternative, for Plaintiff's failure to exhaust his administrative remedies.

2. Plaintiff's First Amended Complaint (Doc. No. 16) is dismissed with prejudice.

3. The Clerk of Court shall issue judgment and close this case.

Dated:    April 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11